**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**Z.D., a child with a disability, individually**
**and by his parent and next friend, J.A.,**

                              **Plaintiffs,**

         **v.**                                          **1:06-CV-1190**
                                                         **(FJS/DRH)**

**NISKAYUNA CENTRAL SCHOOL**
**DISTRICT,**

                              **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**LAW OFFICES OF H. JEFFREY**            **H. JEFFREY MARCUS, ESQ.**
**MARCUS, P.C.**
5888 Main Street
Williamsville, New York 14211
Attorneys for Plaintiffs

**FERRARA, FIERENZA, LARRISON,**         **SUSAN T. JOHNS, ESQ.**
**BARRETT & REITZ, P.C.**
5010 Campuswood Drive
East Syracuse, New York 13057
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

        Plaintiffs filed this action pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 14151(i)(3), seeking a decision (1) reversing the decision of the State

Review Officer Paul F. Kelly ("SRO") and reinstating the decision of the Impartial Hearing

Officer Craig Tessler ("IHO"); (2) finding that Defendant did not provide Plaintiff Z.D. with a free appropriate public education ("FAPE"); (3) awarding Plaintiffs reimbursement for private school tuition; and (4) awarding costs, expenses and attorney's fees for the administrative proceedings and this action.  *See* Dkt. No. 1.

Currently before the Court is Defendant's motion for summary judgment upholding the SRO's decision for the following reasons: (1) the SRO properly determined that Defendant offered an appropriate program; (2) alternatively, Plaintiffs' private school placement was not appropriate; (3) equity does not support reimbursement; and (4) Plaintiff Z.D. lacks standing to bring this appeal.  Also before the Court is Plaintiffs' cross-motion for summary judgment for the following reasons: (1) the SRO was not impartial and the Court should not give deference to the SRO's decision; (2) Defendant's programs were not appropriate; (3) the private school program was appropriate; and (4) the equities favor reimbursement.

## II.  BACKGROUND

Plaintiff Z.D., a student with average range cognitive ability, attended kindergarten through fifth grade at Defendant's schools in regular education classes with special education support.  Plaintiff Z.D. suffers from Reactive Attachment Disorder, Attention Deficit Hyperactivity Disorder, and related problems.  Pursuant to an individualized education program ("IEP") that Defendant's Committee on Special Education ("CSE") developed, Plaintiff Z.D. attended sixth grade at Defendant's middle school until early January 2005 and earned grades of "Bs" and "Cs" in the first quarter.  On January 9, 2005, Plaintiff J.A., Plaintiff Z.D.'s mother, placed Plaintiff Z.D. at Hampshire County School ("HCS"), a residential school that New York

State has not approved for the education of students with disabilities.  Plaintiff J.A. sought

reimbursement for tuition for the portion of the 2004-05 school year Plaintiff Z.D. was enrolled

at HCS and for the 2005-06 school year as well as related expenses.

On April 17, 2006, after a six-day hearing, the IHO ordered Defendant to reimburse

Plaintiff J.A. for the tuition she paid to HCS.  Defendant appealed to the SRO, who reversed the

IHO's decision on July 12, 2006.  Plaintiffs filed the instant action.


### III.  DISCUSSION

**A.      Preliminary matters**

   **1.  *Standard of review and analytical framework***

On a motion for summary judgment in an IDEA case, the court examines the

administrative record and additional evidence to determine whether the school complied with the

IDEA.  *See Pinn v. Harrison Cent. Sch. Dist.*, 473 F. Supp. 2d 477, 481 (S.D.N.Y. 2007)

(citation omitted).  The party seeking relief[1] has the burden of proof and a disputed issue of fact

will not defeat a motion for summary judgment in this type of case.  *See id*. (citations omitted).

Review, however, is limited; and district courts apply a preponderance of the evidence standard

while "giv[ing] 'due weight' to the administrative proceedings, 'mindful that the judiciary

generally lacks the specialized knowledge and experience necessary to resolve persistent and

difficult questions of educational policy.'" *Id*. (quotation omitted).  Accordingly, courts give

"'substantial deference'" to final administrative judgments on educational policies and practices,

---

[1] In this case, Plaintiffs.

even where the SRO disagrees with the IHO.[2]  *See id.* (citations omitted); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007).[3]

Under the IDEA, the state must provide all children with disabilities "'a free appropriate public education.'" *See Gagliardo*, 489 F.3d at 111 (quoting 20 U.S.C. § 1412(a)(1)(A)) (other citation omitted).  If parents believe the state has failed to do so, "they may, at their own financial risk, enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." *Id.* (citing *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985)) (other citation omitted).

To determine whether parents are entitled to reimbursement, courts must consider a two-part test: "(1) was the IEP proposed by the school district inappropriate; [and] (2) was the private placement appropriate to the child's needs." *Id.* at 111-12 (citations omitted).  Under the first part of the test, courts "examine whether the state has complied with the procedures set forth in the IDEA" or "whether the IEP developed through the Act's procedures '[is] "reasonably calculated to enable the child to receive educational benefits."'" *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005) (quotations and citations omitted).  If these requirements are met, the State has met its obligations; however, if the State's actions are either procedurally

---

[2] However, courts do not give due weight to an SRO's determination that overturns an IHO's credibility determinations.  *See Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 888-89 (9th Cir. 2001) (noting agreement with the Second, Third, Fourth, and Tenth circuits) (citing *Karl* [*v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*], 736 F.2d [873,] 877 [(2d Cir. 1984)])) (other citations omitted).

[3] Plaintiffs argue that the law requires SROs to be impartial.  Plaintiffs cite newspaper articles and affidavits to the effect that this particular SRO decided cases almost exclusively in favor of the school districts and had an agenda to limit this type of reimbursement.  The Court finds that Plaintiffs have not presented any evidence that the SRO was not impartial in this case.

or substantively deficient, courts consider the second part of the test. *See id.* (citation omitted).

If the second part of the test is also satisfied, the court enjoys broad discretion to balance the

equities and fashion relief. *See Gagliardo*, 489 F.3d at 112 (citation omitted).


### 2. *Standing and real party in interest*

Initially, Defendant contends that Z.D. is the only Plaintiff in this action. Defendant

asserts that the IDEA provision that allows "any party" to bring a civil action means a party to

the underlying administrative action. Defendant argues that, in this case, this party would be

J.A. Accordingly, Defendant argues that Z.D. does not have standing to bring this action

because he was not a party to the administrative proceeding. Defendant also contends that

Plaintiffs must assert their own legal rights and interest. Defendant contends that Z.D. has not

paid any of the cost of his placement at HCS and, accordingly, does not have an any injury.

Plaintiffs' complaint clearly alleges that both Z.D. and J.A. are Plaintiffs in this action.

*See* Complaint ¶¶ 2-3. Accordingly, the Court denies Defendant's motion for summary judgment

on this ground because Plaintiff J.A. is a party with standing and interest in this action.


**B.**     **Defendant's compliance with the IDEA**

### 1. *Procedural compliance*

Plaintiffs assert the following flaws with the IEDs at issue: (1) failing to properly identify

Z.D.'s needs; (2) having insufficient annual goals; (3) failing to include a behavioral intervention

plan ("BIP"); (4) failing to include a description of Plaintiff Z.D.'s present functioning, including

emotional and psychiatric status, emotional functioning, and their effect on his academic

performance; and (5) failing to indicate how process towards goals would be measured.

Plaintiffs also assert flaws with Defendant's BIP: (1) failing to include any BIP in the IEDs; (2)

failing to identify the frequency and precursors for inappropriate behavior; (3) failing to base the

BIP on a functional behavioral assessment; and (4) basing the BIP on issues that do not

adequately reflect Plaintiff Z.D.'s behavioral deficits.  Additionally, Plaintiffs assert that

Defendant did not provide adequate parental participation because the CSE predetermined

Plaintiff Z.D.'s program and because the CSE ignored Dr. Lipp's testing in formulating the IEDs.

Finally, Plaintiffs take issue with the SRO using information in the record to find the absence of

a procedural violation.

     Under the IDEA, a procedural inadequacy results in the denial of a FAPE only if it "(I)

impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to

participate in the decisionmaking process regarding the provision of a [FAPE] to the parents'

child; or (III) caused a deprivation of educational benefits."  20 U.S.C. § 1415(f)(3)(E)(ii); *see*

*also Perricelli v. Carmel Cent. Sch. Dist.*, No. 06 Civ. 2114, 2007 WL 465211, *10 (S.D.N.Y.

Feb. 9, 2007) (noting that, although the procedural inquiry is not a formality, not every

procedural error renders an IEP inadequate under the IDEA) (citations omitted).  The Second

Circuit has described the procedural side of the inquiry as "focus[ed] on whether the [student's

parents] had an adequate opportunity to participate in the development of [the] IEP."  *Cerra*, 427

F.3d at 192.  Parental participation requires an opportunity to examine records, to participate in

meetings, and to obtain an independent evaluation.  *See id.* (quoting 20 U.S.C. § 1415(b)(1)).

     The vast majority of Plaintiffs' procedural issues relates to the information in the IEPs

and the BIP and Defendant's failure to include goals and performance standards in the IEPs, i.e.,

the procedures designed to ensure that a student receives a FAPE.  The Court finds that Plaintiffs have not shown that any of these alleged procedural violations impeded Plaintiff Z.D.'s right to a FAPE or caused a deprivation of educational benefits beyond the issues raised in their substantive complaints with respect to the IEPs at issue, which the Court discusses below. Accordingly, the Court finds that these alleged problems with the IEPs and the BIP will only constitute procedural violations if they are also substantive violations.[4]

The other part of Plaintiffs' procedural argument focuses on whether Plaintiff J.A. had adequate participation in the decision-making process.  Plaintiffs argue that the CSE did not provide adequate parental participation because it predetermined Plaintiff Z.D.'s IEP and ignored the findings of Dr. Lipp, which Plaintiff J.A. presented.  Based on the fact that the CSE minutes and testimony indicated that virtually no discussion of alternative programs occurred at the May CSE meeting, the IHO concluded that the CSE had predetermined Plaintiff Z.D.'s IEP.  *See* Impartial Hearing Officer's Decision at 46-47.  The SRO disagreed, noting that Defendant sent referral information to a day treatment program that rejected Plaintiff Z.D. and arranged for an independent functional behavioral assessment ("FBA"), and that, contrary to Plaintiffs' assertion, it was Plaintiff J.A. who refused to consider any recommendation other than a day treatment program or self-contained classroom.  *See* SRO Decision at 16.  The Court agrees with the SRO's conclusion and finds that Plaintiffs have not shown that Defendant denied Plaintiff J.A. adequate parental involvement.  Further, with respect to the non-inclusion of Dr. Lipp's test results and opinions, the Court finds that it should defer to the SRO's decision that Defendant's program was

---

[4] The Court echoes and affirms the SRO's admonishment to Defendant to remedy these apparent procedural flaws going forward even though these flaws may not constitute non-compliance with the IDEA in this case.  *See* SRO Decision at 17.

proper with respect to educational policy and practice even without reference to Dr. Lipp's opinion.

With regard to Plaintiffs' contention that the SRO improperly relied on supporting information to find that the procedural violations with the IEPs did not entitle Plaintiff J.A. to reimbursement, the Court finds that the SRO did not find that the supporting information cured the procedural deficits but rather that this information showed that Plaintiff Z.D. was not denied a FAPE due to the procedural violations.  Furthermore, the SRO encouraged Defendant to remedy such flaws in future IEPs.  *See* SRO Decision at 17; *see also* 20 U.S.C. § 1415(f)(3)(E)(iii) ("Nothing in this subparagraph shall be construed to preclude a hearing officer from ordering a local educational agency to comply with procedural requirements under this section.").

Accordingly, the Court finds that Plaintiffs have not met their burden to show procedural inadequacies that resulted in Plaintiff Z.D. not receiving a FAPE.

### 2. *Substantive compliance*

Plaintiffs assert a number of substantive problems with Plaintiff Z.D.'s IEPs.  Plaintiffs mainly assert that, to receive a FAPE, Plaintiff Z.D. required the following: (1) a small, self-contained, structured environment; (2) a program without frequent transitions and large mainstream classes; and (3) a BIP.

A school district meets "IDEA's substantive requirements if a student's IEP is 'reasonably calculated to enable the child to receive educational benefit[s].'"  *Cerra*, 427 F.3d at 194 (quotation omitted).  The IEP need not be designed to maximize the student's potential, but

rather the IDEA represents a "'basic floor of opportunity'" that must likely produce progress more than trivial advancement. *See id.* at 195 (quotation and other citations omitted). Review of grades and advancement from grade to grade are accepted indicators of satisfactory progress. *See Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998) (citation omitted).

The pertinent IEP for Plaintiffs' claim related to the 2004-2005 school year is the December 2004 IEP,[5] which was in place at the time Plaintiff J.A. placed Plaintiff Z.D. at HCS. *See* State Review Officer's Decision ("SRO Decision") at 10. The August 2004 IEP[6] was the operative IEP when Plaintiff Z.D. started the 2004-2005 school year. *See id.* The August 2004 IEP primarily provided that Plaintiff Z.D. would receive the following educational programs: attend regular sixth grade class in middle school; attend a special class[7] 5x45 minutes weekly; attend 30 minutes of group counseling per week; attend 30 minutes of individual counseling per week; attend 30 minutes of occupational therapy per month; have full-day 1:1 teaching assistant; monthly meetings with Plaintiff J.A.; and additional setting, instructional, and testing accommodations. *See* Statement of Material Facts at ¶ 21.

The December 2004 IEP recommended the same special education and related services and setting, instructional, and testing accommodations as the August 2004 IEP. *See id.* at ¶ 22. The December 2004 IEP additionally stated that Wildwood Institute would conduct a functional behavioral assessment for review in February 2005. *See id.*

_____

[5] *See* District Exhibit 53 (all references to District Exhibits are to exhibits in the Administrative Record).

[6] *See* District Exhibit 30.

[7] The "special class" is a class for academically capable students who need a highly structured environment due to social-emotional needs and whose management "warrant[s] a carefully constructed behavior management system." *See* District Exhibit 28.

The February and June 2005 IEPs addressed issues that the Wildwood assessment raised and added a special English class and additional services in science class.  *See* District Exhibits 59, 62.

In addition to these IEPs, in September 2004, Defendant introduced a BIP that listed behaviors of concern and intervention strategies.  *See* District Exhibit 35.

Plaintiffs cite a number of expert opinions that Defendant's program is inappropriate for Plaintiff Z.D., including those of Dr. Braun, a licensed psychologist; Dr. Passen, a child and adolescent psychiatrist; Dr. Lipp, an expert that Plaintiffs hired to analyze Plaintiff Z.D.'s educational needs; the Attachment Institute of New England; and Dr. Reddy, a child and adolescent psychologist.  In the opinion of these experts, a regular school setting was not appropriate and they "recommended a small self-contained setting or a therapeutic day treatment program."  *See* Plaintiffs' Memorandum of Law at 9.

Further, Plaintiffs assert that Plaintiff Z.D. failed to complete homework, or any work, without adult assistance.  *See id*. at 13.  Plaintiffs note that the IHO credited Plaintiff J.A.'s testimony that Plaintiff Z.D. was frequently removed from class.  *See id*.  Finally, in addition to procedural flaws with the BIP, Plaintiffs argue that the BIP's targeting of impulsiveness and problems focusing, instead of work production and peer relationships, worked to deny Plaintiff Z.D. educational benefits due to his frequent removal from the classroom.  *See id*. at 20.

The SRO noted that Plaintiff Z.D. progressed in the areas of academic advancement and independence and produced work at the sixth grade level.  *See* SRO Decision at 12.  Plaintiff Z.D.'s special education teacher noted that his reading skills were average to above average and that his math skills were slightly below average but that he could handle a sixth grade math

curriculum with modifications.  *See id.*  Plaintiff Z.D.'s handwriting was an area of weakness, but

his Social Studies teacher testified that his written expression improved during the year.  *See id.*

Plaintiff Z.D. received the same material content and was graded using the same standards as

regular education students and, in November of 2004, received grades in the B to C range with

positive comments.  *See id.*  Plaintiff Z.D.'s monthly reports from October to December 2004

noted satisfactory work, social interaction with peers, and independent use of his locker.  *See id.*

Those reports also noted that, although Plaintiff Z.D. appeared unfocused in class, he could

answer questions and participate in class.  *See id.*  Plaintiff Z.D.'s special education teacher noted

a decrease in inappropriate behaviors and that he became more independent. *See id.* at 12-13.

With respect to Plaintiff Z.D.'s reliance on the teaching assistant, the SRO found that his

reliance decreased throughout the year and that by the end of the year he could work

cooperatively in groups.  *See id.* at 13.  With respect to the BIP, the SRO found that Plaintiff

Z.D. never saw the principal for disciplinary reasons and that interventions for non-compliance

appeared to lessen the non-compliance once Plaintiff Z.D. understood the program routine.  *See

id.* at 14.[8]

The Second Circuit has noted that courts require objective evidence of social regression

in a day program before finding that the IDEA requires a residential program.  *See Walczak*, 142

F.3d at 131-32.[9]  "Indeed, it would violate IDEA's preference for the least restrictive educational

---

[8] Although the parties dispute whether or not the SRO impermissibly ignored a credibility
determination regarding testimony about how often Plaintiff Z.D. was removed from class, such
a determination does not affect the Court's decision based on the other indicators of Plaintiff
Z.D.'s progress.

[9] With respect to Plaintiffs' arguments concerning deteriorating behavior at home, such

(continued...)

-11-

setting to move a child from a day program where she is making progress to a residential facility simply because the latter is thought to offer superior opportunities." *Id.* at 132 (citation omitted). Furthermore, outside experts' recommendations of different programming do not, by themselves, demonstrate an IDEA violation as deference is paid to the school district, not a third party. *See Watson v. Kingston City Sch. Dist.*, 325 F. Supp. 2d 141, 145 (N.D.N.Y. 2004) (citations omitted).

Although Plaintiffs' evidence arguably addresses what would be the best environment for Plaintiff Z.D., this evidence does not establish that Defendant violated the IDEA standard, which only requires that Defendant provide Plaintiff Z.D. with a FAPE. *See Walczak*, 142 F.3d at 131-32 (noting that the IDEA does require a program to maximize potential or "'everything that might be thought desirable by loving parents'" (quotation and other citations omitted)); *see also Doe v. Bd. of Educ. of Tullahoma City Schs.*, 9 F.3d 455, 460 (6th Cir. 1993) (noting that the IDEA requires a school district to provide a serviceable Chevrolet not a Cadillac solely for a disabled student's use). The Court finds that Plaintiff Z.D. was making more than trivial progress during the fall of 2004 in his program and that Plaintiffs' evidence that a residential, more restrictive setting might be more beneficial is insufficient to disrupt the SRO's determination that the IEPs at issue would continue to generate that progress. Although Plaintiff J.A.'s concern for her son's education is admirable, Defendant reasonably generated the IEPs at issue to enable Plaintiff Z.D. to receive educational benefits and accordingly substantively

---

[9](...continued)
behavior must induce adverse educational consequences to require a change in an IEP. *See Walczak*, 142 F.3d at 131 (distinguishing *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114 [(2d Cir. 1997)]).

complied with IDEA requirements.

Since the Court finds that Plaintiffs did not meet their burden to show a procedural or substantive violation of the IDEA's requirement to provide Plaintiff Z.D. with a FAPE, the Court does not need to address whether the private placement of Plaintiff Z.D. was appropriate or to balance the equities.

## IV.  CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** and Plaintiffs' cross-motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment for Defendant and close this case.

**IT IS SO ORDERED.**

Dated: June 19, 2009
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge